**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY PLATH,<br><br>                    Plaintiff,<br><br>            vs.<br><br>MERIDIANLINK, INC., GEORGE JABER, LARRY KATZ, EDWARD H. MCDERMOTT, REEMA PODDAR, A.J. ROHDE, MARK SACHLEBEN, NICOLAAS VLOK, DUSTON WILLIAMS, and YAEL ZHENG,<br><br>                    Defendants. | **Case No.:**<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Terry Plath ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against MeridianLink, Inc. ("MeridianLink" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

1. Defendants' efforts to sell the Company to funds advised by affiliates of Centerbridge Partners, L.P. ("Centerbridge") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an August 11, 2025, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Under the terms of the transaction, MeridianLink shareholders will receive $20.00 per share in cash for each share of common stock they own.

3. Thereafter, on September 10, 2025, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction (the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example, certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for MeridianLink, provided by MeridianLink management to the Company Board, and the Board's financial advisor, Centerview Partners LLC ("Centerview"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Centerview if any, and provided to the Company.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

**PARTIES**

7. Plaintiff is a citizen of Minnesota, and at all times relevant hereto, has been a MeridianLink stockholder.

8. Defendant MeridianLink, a software-as-a service company, provides software solutions for banks, credit unions, mortgage lenders, specialty lending providers, and consumer reporting agencies in the United States. The Company is incorporated in Delaware and has its principal place of business at 3560 Hyland Avenue, Suite 200, Costa Mesa, CA 92626. Shares of MeridianLink common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "MLNK."

9. Defendant George Jaber ("Jaber") has been a director of the Company Board at all relevant times.

10. Defendant Larry Katz ("Katz") has been a director of the Company Board at all relevant times. In addition, Defendant Katz serves as the Company's President.

11. Defendant Edward H. McDermott ("McDermott") has been chair of the Company Board at all relevant times.

12. Defendant Reema Poddar ("Poddar") has been a director of the Company Board at all relevant times.

13. Defendant A.J. Rohde ("Rodhe") has been a director of the Company Board at all relevant times.

14. Defendant Mark Sachleben ("Sachleben") has been a director of the Company Board at all relevant times.

15. Defendant Nicolaas Vlok ("Vlok") has been a director of the Company Board at all relevant times. In addition, Defendant Vlok serves as the Company's Chief Executive Officer ("CEO").

1  16. Defendant Duston Williams ("Williams") has been a director of the Company
2  Board at all relevant times.

3  17. Defendant Yael Zheng ("Zheng") has been a director of the Company Board at
4  all relevant times.

5  18. Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual
6  Defendants."

7  19. Non-Party Centerbridge is a global alternative investment manager founded on the
8  complementary relationship between Private Equity, Private Credit and Real Estate investing
9  through the full investment cycle.

## JURISDICTION AND VENUE

11  20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange
12  Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges
13  violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to
14  confer jurisdiction on a court of the United States, which it would not otherwise have. The Court
15  has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

16  21. Personal jurisdiction exists over each defendant either because the defendant
17  conducts business in or maintains operations in this District or is an individual who is either present
18  in this District for jurisdictional purposes or has sufficient minimum contacts with this District as
19  to render the exercise of jurisdiction over defendant by this Court permissible under traditional
20  notions of fair play and substantial justice.

21  22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the
22  Individual Defendants, as Company officers or directors, has extensive contacts within this
23  District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

25  *Company Background*

26  23. Defendant MeridianLink, a software-as-a service company, provides software
27  solutions for banks, credit unions, mortgage lenders, specialty lending providers, and consumer

reporting agencies in the United States.

24. In a press release on May 12, 2025, for the First Quarter 2025 Financial Results, the Company highlighted its performance results and financial success. For example, the Company reported Revenue of $81.5 million, an increase of 5% year-over-year; Lending software solutions revenue of $67.1 million, an increase of 10% year-over-year; and Operating income of $3.6 million, or 4% of revenue, and non-GAAP operating income of $19.1 million, or 23% of revenue.

25. Speaking on the results, CEO Vlok stated, "We've accomplished a lot over the last years, expanding the business meaningfully, growing revenue from approximately $150 million in 2019 to $330 million at the midpoint of guidance for 2025. We shifted our solutions from on-premise to the cloud, and established our platform, MeridianLink® One, as the market leader, today, and grew our customer base to nearly 2,000 financial institutions and CRAs."

26. The financial results are not an anomaly, but rather, are indicative of a trend of continued success for Company. Based upon these positive results and outlook, the Company is likely to have future success.

27. Despite this upward trajectory, the Individual Defendants have caused Company to enter into the Proposed Transaction without providing requisite information to Company stockholders such as Plaintiff.

**The Flawed Sales Process**

28. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

29. The Proxy Statement fails to disclose why the Company agreed to a merger that did not include a majority-of-the-minority provision in light of the fact that two entities hold approximately 55% of the outstanding voting power.

30. The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Centerbridge, whether this agreement differed from any

other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement.

31. Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

32. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

33. On August 11, 2025, MeridianLink and Centerbridge issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> IRVINE, Calif.--(BUSINESS WIRE)-- MeridianLink, Inc. (NYSE: MLNK), a leading provider of modern software platforms for financial institutions and consumer reporting agencies, today announced that it has entered into a definitive agreement to be acquired by funds advised by affiliates of Centerbridge Partners, L.P. ("Centerbridge"), a global investment firm with deep experience investing in financial services and technology, in an all-cash transaction that values MeridianLink at an enterprise value of approximately $2.0 billion. Upon closing of the transaction, MeridianLink will become a private company.
>
> Under the terms of the agreement, MeridianLink shareholders will receive $20.00 per share in cash for each share of common stock they own. The purchase price represents a premium of approximately 26% over the closing price of MeridianLink shares as of August 8, 2025, the last full trading day prior to the transaction announcement.
>
> "We are excited for the next chapter of innovation and growth with our partners at Centerbridge. Today's announcement is a strong endorsement of our leading digital lending platform that serves nearly 2,000 community financial institutions and reporting agencies," Larry Katz, President and CEO-designate of MeridianLink, said. "Together with Centerbridge, we will unlock the potential of this company by accelerating product innovation, harnessing the power of AI and data, and enhancing the delivery of exceptional customer experiences. I am proud of this talented team and look forward to further building our trusted, mission-critical, scalable platform that empowers customers and the communities they serve."
>
> "This is an exciting next step for MeridianLink," said Nicolaas Vlok, chief executive officer of MeridianLink. "Our dedicated team has built our market-leading platform and partner ecosystem, and I am confident in the path forward for the Company, bolstered by Larry's leadership and Centerbridge's partnership."

Ed McDermott, Board chair of MeridianLink said, "Over the last several years, our Board has carefully evaluated alternatives to maximize shareholder value. The Board thoroughly reviewed Centerbridge's proposal with the assistance of independent financial and legal advisors and determined this transaction would create certain, compelling and immediate value for our shareholders at an attractive premium and position MeridianLink to increase its competitive edge in a rapidly changing technology landscape."

"As the pace of change across the finance and tech sectors continues to accelerate, MeridianLink is uniquely positioned to help financial institutions enhance their digital lending and credit reporting capabilities to expand and deepen client relationships, unlock the potential of data and AI, and drive their growth," said Jared Hendricks, Senior Managing Director, Centerbridge, and Ben Jaffe, Managing Director, Centerbridge. "At Centerbridge, we have a proven track record of partnering with exceptional companies at the intersection of finance and technology to create value for customers and opportunities for employees. We believe in the importance of fostering a vibrant, modern banking system using market-leading technology. To that end, we are thrilled to work with Larry Katz and the Company's talented team to enhance MeridianLink's platform capabilities and grow their wallet share with new and existing customers."

**Transaction Details**

The MeridianLink Board of Directors unanimously approved the transaction, which is expected to close in the second half of 2025, subject to approval by MeridianLink shareholders and the satisfaction of regulatory approvals and customary closing conditions.

The holders of approximately 55% of MeridianLink's shares of common stock have agreed to vote all of the shares of MeridianLink common stock owned by them in favor of the transaction.

Upon completion of the transaction, MeridianLink's common stock will no longer be listed on any public market. MeridianLink will remain headquartered in Irvine, California.

*Potential Conflicts of Interest*

34. The breakdown of the benefits of the deal indicates that Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of MeridianLink.

35. Additionally, Company insiders currently own large illiquid amounts of Company Shares, Company Options, and Company RSUs, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Shares Owned (#) | Value of Shares Owned ($) |
|---|---|---|
| *Executive Officers* | | |
| Nicolaas Vlok | 654,766 | 13,095,320 |
| Laurence E. Katz | 174,746 | 3,494,920 |
| Elias Olmeta | 9,952 | 199,040 |
| *Non-Employee Directors* | | |
| George Jaber | 16,599 | 331,980 |
| Edward H. McDermott | 16,641 | 332,820 |
| Reema Poddar | 40,769 | 815,380 |
| A.J. Rohde | 40,186 | 803,720 |
| Mark Sachleben | 32,857 | 657,140 |
| Duston Williams | 37,404 | 748,080 |
| Yael Zheng | 42,745 | 854,900 |

| Name | In-the-Money MeridianLink Options (#) | Value of In-the-Money MeridianLink Options ($) |
|---|---|---|
| *Executive Officers* | | |
| Nicolaas Vlok | 2,025,020 | 26,226,374 |
| Laurence E. Katz | — | — |
| Elias Olmeta | — | — |
| *Non-Employee Directors* | | |
| George Jaber | — | — |
| Edward H. McDermott | — | — |
| Reema Poddar | — | — |
| A.J. Rohde | — | — |
| Mark Sachleben | — | — |
| Duston Williams | — | — |
| Yael Zheng | — | — |

| Name | Vested MeridianLink RSUs (#) | Value of Vested MeridianLink RSUs ($) | Unvested MeridianLink RSUs (#) | Value of Unvested MeridianLink RSUs ($) |
|---|---|---|---|---|
| *Executive Officers*[1] | | | | |
| Nicolaas Vlok | 588,488[2] | 11,769,760 | — | — |
| Laurence E. Katz | — | — | 1,062,677 | 21,253,540 |
| Elias Olmeta | — | — | 530,352 | 10,607,040 |

| Non-Employee Directors[3] | | | | |
|---|---|---|---|---|
| George Jaber | 24,724 | 494,480 | — | — |
| Edward H. McDermott | 24,810 | 496,200 | — | — |
| Reema Poddar | 11,862 | 237,240 | — | — |
| A.J. Rohde | 11,862 | 237,240 | — | — |

| Name | Vested MeridianLink RSUs (#) | Value of Vested MeridianLink RSUs ($) | Unvested MeridianLink RSUs (#) | Value of Unvested MeridianLink RSUs ($) |
|---|---|---|---|---|
| Mark Sachleben | 18,264 | 365,280 | — | — |
| Duston Williams | 11,862 | 237,240 | — | — |
| Yael Zheng | 11,862 | 237,240 | — | — |

36. Moreover, certain employment agreements with certain MeridianLink executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash Severance ($) | Value of COBRA Benefits ($) |
|---|---|---|
| Nicolaas Vlok[1] | 1,200,000 | 25,713.18 |
| Laurence E. Katz[2] | 1,100,000 | 25,553.34 |
| Elias Olmeta | 712,500 | 25,257.24 |

37. The Proxy Statement fails to adequately all communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38. Thus, while the Proposed Transaction is not in the best interests of MeridianLink, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers

and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

39. The MeridianLink Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>

40. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

    a. Why the Company agreed to a merger that did not include a majority-of-the-minority provision in light of the fact that two entities hold approximately 55% of the outstanding voting power;

    b. Whether the confidentiality agreements entered into by the Company with Centerbridge differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties; and

    c. Any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction.

<u>Omissions and/or Material Misrepresentations Concerning MeridianLink Financial Projections</u>

41. The Proxy Statement fails to provide material information concerning financial projections for MeridianLink provided by MeridianLink management to the Company Board and Centerview and relied upon by Centerview in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42. Notably, the Proxy Statement reveals that as part of its analyses, Centerview

reviewed: "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of MeridianLink, including certain financial forecasts, analyses and projections relating to the Company prepared by management of MeridianLink and furnished to Centerview by MeridianLink for purposes of Centerview's analysis, which are referred to in this summary of Centerview's opinion as the 'Forecasts,' and which are collectively referred to in this summary of Centerview's opinion as the 'Internal Data.'"

43. The Proxy Statement should have, but fails to provide, certain information in the projections that MeridianLink management provided to the Company Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

44. With regard to the *Projections*, the Proxy Statement fails to disclose:

　　a. Total Reveue, including the inputs, metrics, and assumptions used to determine same;

　　b. Gross Profit, including the inputs, metrics, and assumptions used to determine same;

　　c. Total Operating Expenses, including the inputs, metrics, and assumptions used to determine same;

　　d. EBITDA, including the inputs, metrics, and assumptions used to determine same;

　　e. Adjusted EBITDA, including the inputs, metrics, and assumptions used to determine same;

　　f. Net Operating Profit After Tax, including the inputs, metrics, and assumptions used to determine same; and

　　g. Unlevered Free Cash Flow, including the inputs, metrics, and assumptions used

to determine same.

45. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Centerview' financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

48. In the Proxy Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49. With respect to the *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose:

    a. The Enterprise Value ("EV") for each of the target companies in each selected precedent transaction analyzed;

    b. The specific date on which each selected precedent transaction closed;

    c. The aggregate value of each selected precedent transactions analyzed;

    d. The inputs, metrics, and assumptions used to determine the TV/LTM Adj. EBITDA multiple reference range of 13.0x to 16.0x utilized; and

  e. The number of fully diluted outstanding shares of Company Common Stock as of August 7, 2025.

50. With respect to the *Selected Public Companies Analysis*, the Proxy Statement fails to disclose:

  a. The EV for each of the selected public companies analyzed;

  b. The inputs, metrics, and assumptions used to determine the EV/2026E Adj. EBITDA Trading multiple reference range of 10.0x to 15.0x utilized; and

  c. The number of fully diluted outstanding shares of Company Common Stock as of August 7, 2025.

51. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

  a. The inputs, metrics, and assumptions used to determine the discount rates of 11.0% to 13.0% utilized;

  b. The inputs, metrics, and assumptions used to determine the terminal multiples range of 10.5x to 15.5x;

  c. The Company's weighted average cost of capital utilized; and

  d. The number of fully diluted outstanding shares of Company Common Stock as of August 7, 2025.

52. With respect to the *Analyst Price Target Analysis*, the Proxy Statement fails to disclose the following:

  a. The specific price targets analyzed; and

  b. The specific Wall Street firms that generated the analyzed price targets.

53. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

54. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and

related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public MeridianLink stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

55. Plaintiff repeats all previous allegations as if set forth in full herein.

56. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

57. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

58. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

62. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

63. Plaintiff repeats all previous allegations as if set forth in full herein.

64. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

65.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of MeridianLink's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.     The Individual Defendants acted as controlling persons of MeridianLink within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause MeridianLink to engage in the wrongful conduct complained of herein. The Individual Defendants controlled MeridianLink and all of its employees. As alleged above, MeridianLink is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 15, 2025          **BRODSKY SMITH**

By: *Ryan P. Cardona*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Blvd., Ste. 300
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*